UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CNH Industrial Capital America LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Keith K. Johnson, and Unity Bank, f/k/a Unity Bank East,<br><br>　　　　Defendants. | Case No.:_____<br><br><br><br>**COMPLAINT** |

Plaintiff CNH Industrial Capital America LLC ("CNH"), as and for its Complaint against defendant Keith K. Johnson ("Johnson") and Unity Bank, f/k/a Unity Bank East ("Unity Bank"), states and alleges as follows:

## JURISDICTION

1.　CNH is a Delaware limited liability company authorized to conduct business in Minnesota. CNH's principal place of business is located at 5729 Washington Avenue, Racine, Wisconsin 53406 and it has a Minnesota registered office address located at 100 South Fifth Street, Suite 1075, Minneapolis, Minnesota 55402. CNH is a wholly-owned subsidiary of CNH Industrial Capital LLC, which is a wholly-owned owned subsidiary of CNH Industrial America LLC, which is a wholly-owned subsidiary of Case New Holland Industrial Inc., all of which are Delaware entities with their principal places of business in states other than Minnesota. The ultimate parent of the CNH group of companies is CNH Industrial N.V., a Dutch company listed on the New York Stock Exchange.

1

2. Defendant Keith K. Johnson is an individual citizen of the State of Minnesota, residing at 15460 Little Lake Road, Center City, Minnesota 55012.

3. On information and belief, Unity Bank, formerly known as Unity Bank East, is a Minnesota chartered bank with its principle place of business located at 1180 West 4th Street, Rush City, Minnesota 55069.

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties to this action and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because all defendants reside in the district, or have their principal place of business in this district, and because the events giving rise to this claim occurred in this district.

## FACTS COMMON TO ALL COUNTS

6. CNH is in the business of, among other things, leasing and financing equipment to individuals and businesses involved in the agricultural industry. Among the customers of CNH is Johnson.

7. CNH and Johnson are parties to four (4) retail installment sale contracts. The contracts are described below.

**The 99318 Agreement**

8. On or about October 31, 2014, Johnson entered into a retail installment contract with Timmer Implement, Inc. ("Timmer"), as evidenced by that Retail Installment Sale Contract and Security Agreement, dated October 31, 2014, identified as

2

contract number 99318 (the "99318 Agreement"), executed and delivered by Johnson in favor of Timmer, for the purpose of purchasing a New Holland Round Balers, model BR7070, serial number YEN181576, and a New Holland Discbine Mower Conditioner, model H7450, serial number YDN097935 (together, the "99318 Collateral"), pursuant to the terms and conditions as are more specifically set forth therein.  A true and correct copy of the 99318 Agreement is incorporated by reference and is attached as **Exhibit 1**.

9. Pursuant to the terms of the 99318 Agreement, Johnson was to make four (4) consecutive annual payments of $4,163.54 beginning on November 1, 2015, with one (1) final payment of $4,163.50 on November 1, 2019.

10. Immediately upon execution of the 99318 Agreement, Timmer assigned the 99318 Agreement, along with all rights, title, and interest in the 99318 Agreement and the 99318 Collateral to CNH. *See* **Exhibit 1** at p. 1.

11. To secure Johnson's payment and performance obligations to CNH, pursuant to Paragraph 6 of the 99318 Agreement, Johnson granted CNH a first priority purchase money security interest in the 99318 Collateral, and in all improvements, parts and accessories belonging to the 99318 Collateral, and all substitutions, replacements, products, proceeds, and premium refunds related to the 99318 Collateral.

12. To perfect its interest in the 99318 Collateral, on or about November 18, 2014, CNH filed a UCC-1 Financing Statement (the "99318 Financing Statement") with the Minnesota Secretary of State, which financing statement is identified as filing number 201438596137.  A true and accurate copy of the 99318 Financing Statement is incorporated by reference and is attached as **Exhibit 2**.

13. Paragraph 14 of the 99318 Agreement provides that Johnson is in default if any of the following occurs:

- Johnson fails to pay when due any of its obligations, or to perform any covenant or other obligation under the 99318 Agreement or any other agreement with or assigned to CNH;

- Any other event that occurs that causes CNH, in good faith, to consider that payment or performance of Johnson's obligations is impaired or that the 99318 Agreement is at risk; or

- Johnson breaches any of the other terms of the 99318 Agreement or any other agreement with or assigned to CNH.

14. Pursuant to Paragraph 19 of the 99318 Agreement, upon an event of default CNH shall have the right in its sole discretion to exercise its remedies, which, among other things, include:

- Declaring all obligations immediately due and payable without notice or demand;

- Taking the 99318 Collateral, without notice or hearing, and Johnson expressly waived his right to notice or a prior hearing and agreed that CNH shall not be required to post any bond;

- Selling the 99318 Collateral, or otherwise disposing of it in a commercially reasonable manner;

- Collecting all of CNH's costs that arise from repossessing and/or selling the 99318 Collateral, including without limitation, reasonable legal fees and costs; and

- Exercising all of its rights and remedies either separately or in combination, and any action taken by CNH to recover payment shall not limit CNH's rights with respect to the 99318 Collateral.

15. Paragraph 15 of the 99318 Agreement provides that Johnson shall reimburse CNH for any expense incurred by CNH in protecting or enforcing its rights under the 99318 Agreement, including reasonable attorneys' fees and legal expenses.

16. Johnson has failed to make payments when due under the 99318 Agreement and other agreements with CNH. Johnson is, therefore, in default. Accordingly, and pursuant to the terms and conditions set forth in the 99318 Agreement, CNH is entitled to recover the amounts due under the terms of the 99318 Agreement, which as of July 11, 2018, total not less than $12,856.34, plus late fees and prejudgment interest through the date of final judgment, plus costs and expenses associated with the repossession and disposition of the 99318 Collateral, plus legal expenses and reasonable attorneys' fees incurred, and CNH is entitled to take possession of the 99318 Collateral.

**The 91576 Agreement**

17. On or about October 23, 2015, Johnson entered into a retail installment contract with Arnold's of Kimball, Inc. ("Arnold's"), as evidenced by that Retail Installment Sale Contract and Security Agreement, dated October 23, 2015, identified as contract number 91576 (the "91576 Agreement"), executed and delivered by Johnson in favor of Arnold's, for the purpose of purchasing a Case IH Combine, model 2188, serial number JJC0189724 and a Case IH Combine Head, model 1020, serial number JJC0334264 (together, the "91576 Collateral"), pursuant to the terms and conditions as are more specifically set forth therein. A true and correct copy of the 91576 Agreement is incorporated by reference and is attached as **Exhibit 3**.

18. Pursuant to the terms of the 91576 Agreement, Johnson was to make one payment of $8,704.48 on or before December 1, 2016, followed by three (3) consecutive annual payments of $8,704.48 beginning on December 1, 2017, and one (1) final payment of $8,704.45 on November 1, 2020.

5

142245324.2

19. Immediately upon execution of the 91576 Agreement, Arnold's assigned the 91576 Agreement, along with all rights, title, and interest in the 91576 Agreement and the 91576 Collateral to CNH. *See* **Exhibit 3** at p. 1.

20. On or about November 16, 2016, CNH and Johnson entered into a change agreement, as evidenced by that certain Payment Schedule Change Agreement (the "91576 Amendment"), dated November 16, 2016, whereby CNH and Johnson agreed to modify the payment schedule under the 91576 Agreement. A true and correct copy of the 91576 Amendment is incorporated by reference and is attached as **Exhibit 4.**

21. Pursuant to the 91576 Amendment, Johnson was to make four (4) consecutive annual payments of $2,111.25 commencing on December 1, 2016, followed by one (1) payment of $2,111.25 on November 1, 2020.

22. To secure Johnson's payment and performance obligations to CNH, pursuant to Paragraph 6 of the 91576 Agreement, Johnson granted CNH a first priority purchase money security interest in the 91576 Collateral, and in all improvements, parts and accessories belonging to the 91576 Collateral, and all substitutions, replacements, products, proceeds, and premium refunds related to the 91576 Collateral.

23. To perfect its interest in the 91576 Collateral, on or about October 28, 2015, CNH filed a UCC-1 Financing Statement (the "91576 Financing Statement") with the Minnesota Secretary of State, which financing statement is identified as filing number 850595900055. A true and accurate copy of the 91576 Financing Statement is incorporated by reference and is attached as **Exhibit 5**.

24. Paragraph 14 of the 91576 Agreement provides that Johnson is in default if any of the following occurs:

- Johnson fails to pay when due any of its obligations, or to perform any covenant or other obligation under the 91576 Agreement or any other agreement with or assigned to CNH;

- Any other event that occurs that causes CNH, in good faith, to consider that payment or performance of Johnson's obligations is impaired or that the 91576 Agreement is at risk; or

- Johnson breaches any of the other terms of the 91576 Agreement or any other agreement with or assigned to CNH.

25. Pursuant to Paragraph 19 of 91576 Agreement, upon an event of default CNH shall have the right in its sole discretion to exercise its remedies, which, among other things, include:

- Declaring all obligations immediately due and payable without notice or demand;

- Taking the 91576 Collateral, without notice or hearing, and Johnson expressly waived his right to notice or a prior hearing and agreed that CNH shall not be required to post any bond;

- Selling the 91576 Collateral, or otherwise disposing of it in a commercially reasonable manner;

- Collecting all of CNH's costs that arise from repossessing and/or selling the 91576 Collateral, including without limitation, reasonable legal fees and costs; and

- Exercising all of its rights and remedies either separately or in combination, and any action taken by CNH to recover payment shall not limit CNH's rights with respect to the 91576 Collateral.

26. Paragraph 15 of the 91576 Agreement provides that Johnson shall reimburse CNH for any expense incurred by CNH in protecting or enforcing its rights under the 91576 Agreement, including reasonable attorneys' fees and legal expenses.

27. Johnson has failed to make payments when due under the 91576 Agreement and other agreements with CNH. Johnson is, therefore, in default. Accordingly, and pursuant to the terms and conditions set forth in the 91576 Agreement, CNH is entitled to recover the amounts due under the terms of the 91576 Agreement, which as of July 11, 2018, total not less than $8,153.57, plus late fees and prejudgment interest through the date of final judgment, plus costs and expenses associated with the repossession and disposition of the 91576 Collateral, plus legal expenses and reasonable attorneys' fees incurred, and CNH is entitled to take possession of the 91576 Collateral.

**The 95977 Agreement**

28. On or about November 7, 2016, Johnson entered into a retail installment contract with Minnesota AG Group- Hastings, Inc. ("MN AG"), as evidenced by that Retail Installment Sale Contract and Security Agreement, dated November 7, 2016, identified as contract number 95977 (the "95977 Agreement"), executed and delivered by Johnson in favor of MN AG, for the purpose of purchasing a Case IH Combine, model 2388, serial number HAJ293242 (the "95977 Collateral"), pursuant to the terms and conditions as are more specifically set forth therein. A true and correct copy of the 95977 Agreement is incorporated by reference and is attached as **Exhibit 6**.

29. Pursuant to the terms of the 95977 Agreement, Johnson was to make six (6) consecutive annual payments of $14,331.20, with the first payment beginning on November 7, 2017, and one (1) final payment of $14,331.29 on November 7, 2023.

30. Immediately upon execution of the 95977 Agreement, MN AG assigned the 95977 Agreement, along with all rights, title, and interest in the 95977 Agreement and the 95977 Collateral to CNH. *See* **Exhibit 6** at p. 1.

31. To secure Johnson's payment and performance obligations to CNH, pursuant to Paragraph 6 of the 95977 Agreement, Johnson granted CNH a first priority purchase money security interest in the 95977 Collateral, and in all improvements, parts and accessories belonging to the 95977 Collateral, and all substitutions, replacements, products, proceeds, and premium refunds related to the 95977 Collateral.

32. To perfect its interest in the 95977 Collateral, on or about November 10, 2016, CNH filed a UCC-1 Financing Statement (the "95977 Financing Statement") with the Minnesota Secretary of State, which financing statement is identified as filing number 914531800043. A true and accurate copy of the 95977 Financing Statement is incorporated by reference and is attached as **Exhibit 7**.

33. Paragraph 14 of the 95977 Agreement provides that Johnson is in default if any of the following occurs:

- Johnson fails to pay when due any of its obligations, or to perform any covenant or other obligation under the 95977 Agreement or any other agreement with or assigned to CNH;

- Any other event that occurs that causes CNH, in good faith, to consider that payment or performance of Johnson's obligations is impaired or that the 95977 Agreement is at risk; or

- Johnson breaches any of the other terms of the 95977 Agreement or any other agreement with or assigned to CNH.

142245324.2

34. Pursuant to Paragraph 19 of the 95977 Agreement, upon an event of default CNH shall have the right in its sole discretion to exercise its remedies, which, among other things, include:

- Declaring all obligations immediately due and payable without notice or demand;

- Taking the 95977 Collateral, without notice or hearing, and Johnson expressly waived his right to notice or a prior hearing and agreed that CNH shall not be required to post any bond;

- Selling the 95977 Collateral, or otherwise disposing of it in a commercially reasonable manner;

- Collecting all of CNH's costs that arise from repossessing and/or selling the 95977 Collateral, including without limitation, reasonable legal fees and costs; and

- Exercising all of its rights and remedies either separately or in combination, and any action taken by CNH to recover payment shall not limit CNH's rights with respect to the 95977 Collateral.

35. Paragraph 15 of the 95977 Agreement provides that Johnson shall reimburse CNH for any expense incurred by CNH in protecting or enforcing its rights under the 95977 Agreement, including reasonable attorneys' fees and legal expenses.

36. Johnson has failed to make payments when due under the 95977 Agreement and other agreements with CNH. Johnson is, therefore, in default. Accordingly, and pursuant to the terms and conditions set forth in the 95977 Agreement, CNH is entitled to recover the amounts due under the terms of the 95977 Agreement, which, as of July 11, 2018, total not less than $92,660.54, plus late fees and prejudgment interest through the date of final judgment, plus costs and expenses associated with the

repossession and disposition of the 95977 Collateral, plus legal expenses and reasonable attorneys' fees incurred, and CNH is entitled to take possession of the 95977 Collateral.

**The 98524 Agreement**

37. On or about August 31, 2017, Johnson entered into a retail installment contract with Baribeau Implement Company, Inc. ("BICI"), as evidenced by that Retail Installment Sale Contract and Security Agreement, dated August 31, 2017, identified as contract number 98524 (the "98524 Agreement"; collectively, the 99318 Agreement, 91576 Agreement, 95977 Agreement, and 98524 Agreement are the "Agreements"), executed and delivered by Johnson in favor of BICI, for the purpose of purchasing a H&S Bale Wrapper, model BW100, serial number 712574 (the "98524 Collateral"; collectively the 99318 Collateral, 91576 Collateral, 95977 Collateral, and 98524 Collateral are the "Collateral"), pursuant to the terms and conditions as are more specifically set forth therein. A true and correct copy of the 98524 Agreement is incorporated by reference and is attached as **Exhibit 8**.

38. Pursuant to the terms of the 98524 Agreement, Johnson was to make forty-seven (47) consecutive monthly payments of $436.04, with the first payment beginning on October 1, 2017, and one (1) final payment of $436.35 on September 1, 2021.

39. Immediately upon execution of the 98524 Agreement, BICI assigned the 98524 Agreement, along with all rights, title, and interest in the 98524 Agreement, related guarantees, and the 98524 Collateral to CNH. See **Exhibit 8** at p. 1.

40. To secure Johnson's payment and performance obligations to CNH, pursuant to Paragraph 6 of the 98524 Agreement, Johnson granted CNH a first priority

purchase money security interest in the 98524 Collateral, and in all improvements, parts and accessories belonging to the 98524 Collateral, and all substitutions, replacements, products, proceeds, and premium refunds related to the 98524 Collateral.

41. To evidence its interest in the 98524 Collateral, on or about September 13, 2017, CNH filed a UCC-1 Financing Statement (the "98524 Financing Statement"; collectively, the 99318 Financing Statement, 91576 Financing Statement, 95977 Financing Statement, and 98524 Financing Statement are the "Financing Statements") with the Minnesota Secretary of State, which financing statement is identified as filing number 964647800032. A true and accurate copy of the 98524 Financing Statement is incorporated by reference and is attached as **Exhibit 9**.

42. Paragraph 14 of the 98524 Agreement provides that Johnson is in default if any of the following occurs:

- Johnson fails to pay when due any of its obligations, or to perform any covenant or other obligation under the 98524 Agreement or any other agreement with or assigned to CNH;

- Any other event that occurs that causes CNH, in good faith, to consider that payment or performance of Johnson's obligations is impaired or that the 98524 Agreement is at risk; or

- Johnson breaches any of the other terms of the 98524 Agreement or any other agreement with or assigned to CNH.

43. Pursuant to Paragraph 19, upon an event of default CNH shall have the right in its sole discretion to exercise its remedies, which, among other things, include:

- Declaring all obligations immediately due and payable without notice or demand;

- Taking the 98524 Collateral, without notice or hearing, and Johnson expressly waived his right to notice or a prior hearing and agreed that CNH shall not be required to post any bond;

- Selling the 98524 Collateral, or otherwise disposing of it in a commercially reasonable manner;

- Collecting all of CNH's costs that arise from repossessing and/or selling the 98524 Collateral, including without limitation, reasonable legal fees and costs; and

- Exercising all of its rights and remedies either separately or in combination, and any action taken by CNH to recover payment shall not limit CNH's rights with respect to the 98524 Collateral.

44. Paragraph 15 of the 98524 Agreement provides that Johnson shall reimburse CNH for any expense incurred by CNH in protecting or enforcing its rights under the 98524 Agreement, including reasonable attorneys' fees and legal expenses.

45. Johnson has failed to make payments when due to CNH under the Agreements. Johnson is, therefore, in default under the 98524 Agreement. Accordingly, and pursuant to the terms and conditions set forth in the 98524 Agreement, CNH is entitled to recover the amounts due under the terms of the 98524 Agreement, which as of July 11, 2018, total not less than $13,733.40, plus late fees and prejudgment interest through the date of final judgment, plus costs and expenses associated with the repossession and disposition of the 98524 Collateral, plus legal expenses and reasonable attorneys' fees incurred, and CNH is entitled to take possession of the 98524 Collateral.

**Farm-Lender Mediation**

46. To attempt to resolve his defaults, CNH and Johnson entered into Farmer Lender Mediation. The mediation did not resolve the parties' dispute and the case mediator terminated the mediation. A true and correct copy of the Farmer Lender

Mediation File Closing Statement is attached as **Exhibit 10** and is incorporated by reference.

**Unity Bank's Interest in the Collateral**

47. Unity Bank may claim some interest in the Collateral by virtue of certain UCC filings made with the Minnesota Secretary of State on February 17, 2011. True and correct copies of the UCC filings made by Unity Bank are attached as **Exhibit 11** and are incorporated by reference.

48. As evidenced by the Agreements and Financing Statements, CNH has a first-priority, purchase-money security interest in the Collateral that is superior and the paramount with regard to the Collateral.

## COUNT 1 - BREACH OF CONTRACT

49. CNH realleges and incorporates by reference the allegations contained in paragraphs 1–48 as if fully set forth herein.

50. Pursuant the Agreements, CNH and Johnson are parties to the Agreements, each of which constitutes a valid and enforceable contract.

51. CNH has complied with all of its obligations pursuant to the Agreements.

52. Johnson has breached the Agreements by failing to make required payments when due in accordance with the terms and conditions of the Agreements.

53. As a direct and proximate result of Johnson's default and breach of his obligations under the Agreements, CNH has suffered damages as of July 11, 2018, of not less than $127,403.85, in addition to late charges and interest which continue to accrue through the date of judgment, plus costs and expenses incurred in obtaining and disposing

of the Collateral, plus legal expenses and reasonable attorneys' fees incurred, and CNH is entitled to possession of the Collateral.

### COUNT 2 - UNJUST ENRICHMENT

54. CNH realleges and incorporates by reference the allegations contained in paragraphs 1–53 as if fully set forth herein.

55. CNH financed the acquisition of the Collateral for Johnson, who received and utilized, and continues to utilize, the Collateral.

56. CNH had demanded payment but Johnson has failed and refused to make payment.

57. As result, Johnson has been unjustly enriched in the amount, as of July 11, 2018, of not less than $127,403.85, in addition to late charges and interest which continue to accrue through the date of judgment, plus costs and expenses incurred in obtaining and disposing of the Collateral, plus legal expenses and reasonable attorneys' fees incurred.

### COUNT 3 - CLAIM AND DELIVERY: MINN. STAT. § 565.21 ET SEQ.

58. CNH realleges and incorporates by reference the allegations contained in paragraphs 1–57 as if fully set forth herein.

59. Pursuant to the terms and conditions of the Agreements, CNH is entitled to possession of the Collateral upon a default of Johnson's obligations to CNH.

60. Johnson has breached its obligations under Agreements by virtue of his failure to make payments when due.

61. On information and belief, Johnson is still in possession of the Collateral.

62. By virtue of Johnson's breaches of their obligations under the Agreements, Johnson is no longer entitled to use or possess the Collateral, and he is wrongfully detaining it.

63. CNH is entitled to an order (i) directing Johnson to deliver, or cause to be delivered, the Collateral to a location to be designated by CNH, or such other location as agreed by the parties; (ii) directing that the Collateral be immediately and permanently seized and taken from the possession of Johnson; and (iii) directing that the Collateral be delivered to CNH or its designated agent.

### COUNT 4 - DECLARATORY JUDGMENT: 28 U.S.C. § 2201

64. CNH realleges and incorporates by reference the allegations contained in paragraphs 1–63 as if fully set forth herein.

65. Johnson granted CNH a purchase-money security interest in the Collateral.

66. CNH estimates that the aggregate value of the Collateral is in excess of $75,000.00.

67. The Agreements and the Financing Statements, which CNH filed with the Minnesota Secretary of State, serve as evidence of CNH's valid and perfected purchase-money security interest in the Collateral.

68. Unity Bank has filed a UCC-1 financing statement claiming a blanket lien on all inventory, chattel paper, accounts, contract rights, equipment, general intangibles, furniture, fixtures, machinery and all other business assets whether any of the foregoing is owned now or acquired later and all accessions and additions thereto of Johnson.

69. Unity Bank may claim a security interest in the Collateral based on its UCC-1 financing statement.

70. CNH's purchase-money security interest in the Collateral is prior, paramount, and superior to the interest, if any, of Unity Bank.

71. There exists a real, current, and justiciable controversy concerning whether CNH's perfected security interest in the Collateral is prior, paramount, and superior to any interest of Unity Bank.

72. CNH seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that CNH's interest in the Collateral is prior, paramount, and superior to any interest claimed by Unity Bank.

**WHEREFORE**, CNH prays that the Court:

A. Enter a judgment and order directing Johnson to deliver, or cause to be delivered, the Collateral to a location to be designated by CNH or the Court;

B. Enter a judgment and a seizure order directing law enforcement to seize the Collateral and deliver possession to CNH or its agent;

C. Enter a judgment and order granting to CNH the exclusive right to possession of the Collateral;

D. Subject to the ultimate disposition of the Collateral, enter a judgment against Johnson and in favor of CNH for damages for Johnson's breach of the Agreements in an amount to be proven at trial, but no less than, as of July 11, 2018, $127,403.85, plus late charges and interest, which interest continues to accrue through the

date of judgment, plus costs and expenses incurred in obtaining and disposing of the Collateral, as well as costs and reasonable attorneys' fees incurred;

E. Subject to the ultimate disposition of the Collateral, enter a judgment against Johnson and in favor of CNH for damages for his unjust enrichment, in an amount to be proven at trial, but no less than, as of July 11, 2018, $127,403.85, plus late charges and interest, which interest continues to accrue through the date of judgment, plus costs and expenses incurred in obtaining and disposing of the Collateral, as well as costs and reasonable attorneys' fees incurred;

F. Enter a declaratory judgment adjudicating that CNH's perfected, purchase-money security interest in the Collateral is prior, paramount, and superior to any interest of Unity Bank; and

G. Award CNH such other and further relief as the Court deems just and equitable.

**STINSON LEONARD STREET LLP**

Dated: September 28, 2018     By:     *s/ Benjamin J. Court*
                                      Benjamin J. Court (#0319016)
                                      Andrew J. Glasnovich (#0398366)

                                      50 South Sixth Street, Ste. 2600
                                      Minneapolis, MN 55402

                                      Phone: 612.335.1500
                                      Fax: 612.335.1657
                                      Benjamin.Court@stinson.com
                                      Drew.Glasnovich@stinson.com

                                      **ATTORNEYS FOR CNH INDUSTRIAL CAPITAL AMERICA, LLC**

142245324.2